## Minton v. Commonwealth.

(Decided November 14, 1924.)

### Appeal from Muhlenberg Circuit Court.

Intoxicating Liquors—Evidence Held to Sustain Conviction for Sale.—Evidence held to sustain conviction for selling intoxicating beverages.

LUKE TEAGUE for appellant.

FRANK E. DAUGHERTY, Attorney General, CHAS. F. CREAL, Assistant Attorney General, and WILKINS & SPARKS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

Appellant Minton was accused by warrant in the police court of Central City of the offense of selling intoxicating beverages contrary to law. A trial in that court resulted in a verdict of conviction, his punishment being fixed at a fine of $130.00 and thirty days' confinement in the county jail. An appeal was prosecuted to the Muhlenberg circuit court, where a *de novo* trial was had. He was again found guilty by a verdict of a jury, and his punishment fixed at a fine of $175.00 and forty days' confinement in the county jail.

Appellant now insists, upon appeal to this court, that the judgment should be reversed because the testimony for the Commonwealth was insufficient to support the judgment, and because it was made up of conclusions of witnesses and not of facts. There is a sharp conflict in the evidence. Several witnesses testified for the Commonwealth and an equal number or more for the appellant.

A police officer named Dotson was called for the Commonwealth and after stating he was a member of the

police force and that he was acquainted with defendant and his restaurant and soft drink stand, was asked:

"Q. I will get you to state whether or not at any time you saw him (appellant) make a sale of liquor known as Jamaica ginger? A. Yes, sir, I saw the fellow mix and drink it. Q. Where did you see that? A. At the back part of his building. He was in the kitchen. Q. Anybody with you? A. Yes, Gordon Suthard. . . . Q. Tell the jury just what you saw? A. Couple of fellows there, one named Lynn and one named, I do not know him, they was drinking and we had been watching them that day, they were pretty well drunk, and we was watching them on account of being full, and they went in this place and we went around to the back and looked in at the window, and when they got back there they poured this Jamaica ginger in two parts, split it in glasses and made two drinks out of it, and they poured some stuff in it. Q. Did you see Lynn with it? A. Yes, sir. Q. What was it? A. Jamaica ginger. Q. What is Jamaica ginger? A. Well, I couldn't tell you, it's a —. Q. State whether or not it is an intoxicating beverage? A. Yes, sir. Q. Do you know what per cent of alcohol it contains? A. Eighty-three per cent. Q. To refresh your recollection, I will ask you if it does not contain ninety-three per cent? A. Yes, sir; some of it ninety-three per cent. Q. Can you tell the jury about the size of those bottles? A. Two ounce bottles, practically all put in two ounce bottles."

The other police officer testified in substance the same. A patron in the restaurant testified he saw the wife of appellant, who was acting as clerk in the restaurant, sell a bottle of Jamaica ginger to the persons named by the police officers as purchasers and he drank the fluid; that after the two men had consumed a bottle of Jamaica ginger by making two highballs they bought a second bottle from the same clerk in the restaurant, she having witnessed their act in making the highballs and in drinking them.

For appellant it was testified that he was not present in the restaurant at the time the sale was made and that there was no Jamaica ginger in the restaurant and that none was sold to the persons named by the police officers.

In fact, the daughters of appellant testified that no part of the testimony concerning the sale of Jamaica ginger by the wife in the restaurant was true. They were supported in their testimony by other witnesses. The jury heard and considered all this, and after receiving instructions embodying the law of the case from the court, returned a verdict of guilty against appellant. The evidence was not all one way, and the jury had the right to decide which witnesses told the truth; that was clearly within the province of the jury, and having determined that the witnesses for the Commonwealth related the facts, all parties are concluded thereby. We find no reason for disturbing the verdict.

Judgment affirmed.